# EXHIBIT E

# FILED UNDER SEAL

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1287

In re: GRAND JURY SUBPOENA

UNITED STATES OF AMERICA

*Appellee,*

v.

CHELSEA MANNING,

*Movant-Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia, Alexandria Division

*The Honorable Claude M. Hilton, District Judge*

**MEMORANDUM REPLY BRIEF FOR THE APPELLANT**

1

# Table of Contents

Table of Contents                                                               2

Table of Authorities                                                            3
   Federal Cases                                                 3

Defendant-Appellant's Reply Brief                                              5
   Preliminary Statement                                          5

Point 1: The District Court Erred by Failing to Order the Government to
Disclose Electronic Surveillance.                                               5

Point 2: The District Court Erred by Failing to Inquire of the Government
as to the Sole and Dominant Purpose of the Subpoena
Issued to Ms. Manning                                                          12

Point 3: The District Court Erred by Holding the Substance of the
Civil Contempt Hearing in a Closed Courtroom                                   15

Conclusion                                                                     20

## Table of Authorities

*United States v. Alvarado,* **840 F.3d 184 (4th Cir. 2016)** — 15

*United States v. Apple,* **915 F.2d 899 (4th Cir 1990)** — 7

*United States v. Appelbaum,* **707 F.3d 283 (4th Cir., 2013)** — 16

*In re Baker,* **680 F.2d 721 (11th Cir. 1982)** — 8

*In re: Charlotte Observer,* **921 F.2d 47, 50 (4th Cir. 1990)** — 16

*Doe v. Pub. Citizen,* **No. 12-2209 (4th Cir., 2014).** — 19

*United States v. Garcia,* **No. 16-4448 (4th Cir., 2017)** — 6

*Gelbard v. United States,* **408 U.S. 41, 56, 92 S. Ct. 2357, 2365, 33 L. Ed. 2d 179 (1972)** — 10

*Hartman v. Lee,* **283 F.3d 190, at 194 (4th Cir., 2002).** — 18

*In re: Knight Pub. Co.,* **743 F.2d 231 (4th Cir. 1984)** — 19

*In re Grand Jury Investigation,* **to 431 F. Supp. 2d 584, 590 (E.D. Va. 2006)** — 7

*In re Grand Jury Proceedings (Macklen),* **525 F. Supp. 831, 834 (D.S.C. 1981)** — 10

*In re: Grand Jury Proceedings,* **417 F.3d 18, at 26 (1st Cir. 2005)** — 16

*In re Grand Jury Subpoena (T-112),* **597 F.3d 189, 210 (4th Cir. 2010)** — 7

*Matter of Investigative Grand Jury Proceedings on Apr. 6, 1977,* **432 F. Supp. 50, 54 (W.D. Va. 1977)** — 11

*United States Hargrove,* **625 F.3d 170, 184 (4th Cir. 2010)** — 6

*United States v. Huss*, 482 F.2d 38 (2nd Cir. 1973).                                              8

*Levine v. United States* , 362 U.S. 610 (1960).                                                 17

*United States v Lynn*, 592 F.3d 572 (4th Cir 2010)                                               6

*United States v. Nabors*, 707 F.2d 1294 (9th Cir. 1983)                                          8

*In re: North*, 16 F.3d 1234 (D.C. Cir. 1994)                                                    16

*In re Oliver, 333 U.S. 257 (1948)*                                                              17

*United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983,
2 L.Ed.2d 1077 (1958)                                                                            19

*United States v. Seitu Sulayman Kokayi* (E.D.V.A, Alexandria Div.,
1:18-cr-00410, Docket No. 5)                                                                     17

*Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv., 335 F.
Supp. 3d 772, 786 (D. Md. 2018)*                                                                  9

*United States v. Robins,* 978 F.2d 975 (5th Cir. 1992)                                           8

## Defendant-Appellant's Memorandum Reply Brief

## Preliminary Statement

Movant-Appellant Chelsea Manning, by and through counsel, submits this *Memorandum Reply Brief* in response to the brief submitted by the Plaintiffs-Appellees on April 9, 2019, and in further support of her appeal of the District Court's Order on March 8, 2019, finding her in civil contempt of court, and ordering her immediate incarceration. Ms. Manning has been incarcerated for the past month.

The government claims assiduously that Ms. Manning is litigating primarily for purposes of delay, however, as it is Ms. Manning who remains in jail, deprived of her liberty, any purported delay is not in her interest. Her appeal is not frivolous: substantial rights are at stake. She simply seeks review of the lower court's determination that her refusal to testify was not justified under relevant precedent. The relevant facts and procedural history are set forth in Ms. Manning's brief to this Court of March 29, 2019.

## Point 1: The District Court Erred by Failing to Order the Government to Disclose Electronic Surveillance.

As a preliminary matter, the government alleges that Ms. Manning failed to adequately preserve this issue for appeal. On the contrary, counsel renewed the earlier request for the government to make very simple affirmations or denials based

on the questions that had been asked, precisely because as stated, "at a minimum, the witness is entitled to the information that was relied upon in support of the contempt application... [and] they are also entitled to information in the possession of the Government that would support their claim to having just cause excusing their testimony." J.A. 373. Ms. Manning did not request substantive information, but referred to the arguments made previously in renewing her very basic request for an affirmation or denial that she was subject to electronic surveillance.

> "A party need not "formulaic[ally]" object to a perceived error in order to preserve that issue for appellate review. Lynn, 592 F.3d at 577. Instead, a party "may preserve a claim of error by informing the court—when the court ruling or order is made or sought— of the action the party wishes the court to take."
> *United States v. Garcia*, No. 16-4448 (4th Cir., 2017)(citing *United States v Lynn*,      592      F.3d      572      (4th      Cir      2010)).

Ms. Manning's request was sufficient to preserve the issue for appeal.

Assuming *ex arguendo* that the issue was not preserved, the failure of the district court to rule upon this motion constitutes plain error in the face of the government's failure to make even basic affirmations or denials of illegal electronic surveillance., *United States Hargrove*, 625 F.3d 170, 184 (4th Cir. 2010) (plain error exists where there is a "serious error affecting the fundamental fairness, integrity, [*and*] public reputation of judicial proceedings.".

Somewhat more substantively, the government argues that Ms. Manning failed to trigger the government's obligation to canvass the relevant agencies

inasmuch as 1) the language in her declaration was too "equivocal"; 2) that she did

not sufficiently demonstrate that she was a "party aggrieved"; and 3) that she failed

to posit a nexus between the complained-of surveillance and her interrogation before

the grand jury. Each argument is without merit.

First, the government's argument mischaracterizes this Circuit's holdings.

Contrary to the government's assertions, Ms. Manning's disclosure motion set forth

sufficient facts which, under this Court's decision in *In re Grand Jury Subpoena (T-*

*112)*, 597 F.3d 189, 210 (4th Cir. 2010), trigger the government's duty to respond.

This Court rejected the very argument made here by the government, because in fact

it is generally not possible for a witness to make detailed statements about covert

surveillance:

> "Requiring the government to affirm or deny the existence of illegal surveillance
> of witnesses imposes only a minimal additional burden upon the government,
> but requiring a witness to establish the existence of such surveillance may
> impose a burden on the witness that he can rarely meet, since, to be effective,
> electronic surveillance must be concealed from its victim." *Id.*

Accordingly, the principle that "[a] cognizable 'claim' need be no more than

a 'mere assertion,' provided that it is a positive statement that illegal surveillance

has taken place" is uniformly recognized in this Circuit. *In re Grand Jury*

*Investigation*, to 431 F. Supp. 2d 584, 590 (E.D. Va. 2006), citing to *United States*

*v. Apple*, 915 F.2d 899 (4th Cir 1990). This Court has recognized that the burden

placed on a party moving for disclosures under §3504 *must* be low in order to avoid

patent injustice:

> "[to] compel a party who objects to the use of evidence obtained as a result of
> unlawful wiretapping to go forward with a showing of taint, and then to withhold
> from him the means or tools to meet that burden, is to create an absurdity in the
> law." *Apple*, at 910, *citing United States v. Huss*, 482 F.2d 38 (2nd Cir. 1973).

The government's reliance on *Nabors, Robins,* and *Baker*, is unavailing.

*United States v. Nabors*, 707 F.2d 1294 (9th Cir. 1983); *United States v. Robins*, 978

F.2d 975 (5th Cir. 1992); *In re Baker*, 680 F.2d 721 (11th Cir. 1982). Contrary to

those cases, where the claims were based entirely upon generalized suspicion and

speculation, Ms. Manning's declaration makes abundantly clear the reasons for her

belief that she specifically was electronically surveilled; when, where, and by whom;

and the connection she posits between that surveillance and the subpoena that

compelled her appearance.[1]

Ms. Manning, in an abundance of caution, did not overstate the absolute truth

of her claims, which of course she could not have proven, but this does not mean her

allegations were imprecise or speculative. For example, while the government reads

her declaration to suggest that she may have been surveilled at some time within a

---

[1] The government seems to take some of her assertions as evidence that Ms.
Manning concedes being subject *only* to physical surveillance, although the
declaration makes quite clear that the vans surveilling her were equipped with
antennae, clearly implying electronic surveillance such as would be used to
intercept internet traffic. See Opp. p. 25

span of nine months, she actually alleges something rather more pernicious: that she was continuously electronically surveilled over the course of nine months. See Manning Dec. J.A. 356.

Furthermore, the government perversely suggests that the law might reach a different result had Ms. Manning said "I *have been* the subject of illegal electronic surveillance" (Opp. p. 24) rather than "I have *reason to believe* I was the subject of illegal electronic surveillance."[2] The implication is that Ms. Manning made a simple and unsupported statement of belief, but of course, this initial statement was followed by detailed explanations of the many predicate reasons underlying her belief. See Manning Dec., J.A. 56. The government may not artificially elevate or complicate the threshold requirements of §3504 by demanding that litigants articulate their allegations in a particular way.

The burden on the aggrieved party to trigger simple government denials is, simply put, minimal — *as is the corresponding burden on the government.* *Wikimedia Found. v. Nat'l Sec. Agency/Cent. Sec. Serv.,* 335 F. Supp. 3d 772, 786 (D. Md. 2018) (the requisite affirmations or denials place "only a minimal additional

---

[2] As noted in Appellant's brief, Chelsea Manning is a high-profile person of interest to every agency concerned with national security, all of which are known to engage in electronic surveillance, lawful and otherwise. It is patently absurd to imagine that she alone of such persons has not been subject to electronic surveillance, which is certainly why the government has been so reluctant to be called upon to make the requested denials.

burden upon the government."). It is therefore worth here noting that the government wildly overstates the burden posed by doing an all-agency canvass, as well as its significance. Section 3504 requires that once adequately alleged, the government must disclose or deny the existence of electronic surveillance. It does not say they must do so, except if it is inconvenient. The purposes of §3504 are to protect significant rights, to ensure that law enforcement agencies have complied with their obligations under the law, and to ensure furthermore that the government and the courts are not made a party to malfeasance, period. *See Gelbard v. United States,* 408 U.S. 41, 56, 92 S. Ct. 2357, 2365, 33 L. Ed. 2d 179 (1972); *In re Grand Jury Proceedings (Macklen)*, 525 F. Supp. 831, 834 (D.S.C. 1981) ("the *government* should bear the burden of making a concrete denial"). Courts have endeavored to make the burden on the government concomitant with the specificity of the witness' allegations, but the obligation itself, however inconvenient, arises upon a "positive assertion." Here, such assertions have been made.

Next, but no less perplexing, the government alleges that Ms. Manning was not "a person aggrieved" by unlawful electronic surveillance. Finally, the government asserts that Ms. Manning failed to articulate the requisite causal nexus between such surveillance and the grand jury questions.

Despite not having been "privy to the full scope of questioning," (Opp. p. 38) she was told early on that the government intended to question her about purported

inconsistent statements. Because she knows (1) that she made no such statements, and (2) that she has received emails from others that may contain and/or incorrectly assign to her such statements, she believes the subpoena was propounded on the basis of unlawfully obtained electronic surveillance. (See Manning Dec., under seal, Paragraphs 13-16, 27). Not only does this constitute the "arguable causal connection" between the surveillance and the subpoena/questions propounded thereunder, it is self-evident that Ms. Manning would be first among those "aggrieved" by such an event. The government's contention that she must show more, while withholding from her the very information that would form the basis of her ability to do so, is the very definition of the kind of "absurdity" contemplated by Apple, *supra*.

Even when a witness' claim of illegal wiretapping is "general and unsubstantiated," the law requires that the Government, at a minimum, issue a "general denial". *Matter of Investigative Grand Jury Proceedings on Apr. 6, 1977*, 432 F. Supp. 50, 54 (W.D. Va. 1977). In each case cited to support their position, the issue is not the existence, but the *sufficiency* of government denials. Here, however, the government has been quite careful not to make even a *general denial,* something they could have done at any time with absolutely no disruption to the grand jury. Instead, without making any denials of electronic surveillance — *almost certainly because they cannot do so truthfully* — they hammer away at the alleged

11

deficiencies in Ms. Manning's syntax, misstate the burdens to be borne by both Ms.

Manning and the government, and impugn her motives.

Given the government's complete failure to comply with the disclosure

obligations required under the statute the lower court erred when it adjudicated Ms.

Manning in contempt. This Court should vacate the contempt and either release Ms.

Manning or remand for further proceedings.

**Point 2: The District Court Erred by Failing to Inquire of the Government as to the Sole and Dominant Purpose of the Subpoena Issued to Ms. Manning.**

Contrary to the government's contentions, this issue was preserved. Ms.

Manning argued as extensively as the District Court allowed with respect to the issue

of grand jury abuse. In hearings on both March 5 and 6, Ms. Manning expressed

concerns that she was being called so that the government could preview or

undermine her testimony as a potential defense witness at a trial, and not pursuant

to a legitimate grand jury investigation. Counsel furthermore referred back to

previous statements regarding the potential abuse of the grand jury:

> "MS. METZLER-COHEN [*sic*]: Well, Judge, there are questions as to the
> subpoena as a whole that I think deserve to be heard and are ripe for review
> today. So, you know, **if in case the subpoena has been propounded ... in
> order to undermine her as a potential defense witness**... " (J.A. 302).

and again:

"We have, of course, expressed our concerns about the potential for a perjury trap and our concerns that **this grand jury subpoena is being used to undermine Ms. Manning potentially as a witness**, put her in jeopardy of contempt and reincarceration, or to go on a fishing expedition to constitutionally protected activity. (J.A. 304-5).

On March 8, Ms. Manning *again* pointed out her concern that repetitious questioning was abusive. The issue to be preserved was whether the subpoena or questioning was an abuse of grand jury power. Ms. Manning raised and preserved the issue of grand jury abuse in each hearing, and referred clearly to the issue of using repetitious questioning to undermine witness credibility — a strategy clearly relevant only to a prosecutor preparing for trial. As noted above, it is not necessary for an objection to be preserved in formulaic language: the arguments as to grand jury abuse were made in the Motion to Quash, and at each appearance prior to and including the March 8 contempt hearing. These arguments were then referred to again during the contempt hearing, and renewed. These arguments were thus preserved.

At no time and in no manner did the government respond substantively to these arguments. Instead they rest on the bare statement that a presumption of regularity attaches to grand jury proceedings. As with the electronic surveillance issue, Ms. Manning was not in a position to know with certainty whether the sole and dominant purpose of the subpoena was to harass her, or to undertake unnecessary post-indictment questioning. She did however raise concerns so serious

as to have required the District Court to request some assurances from the government. The District Court did not request such assurances, and indeed, made no comment on the arguments other than to make an initial and conclusory statement that they were speculative and premature. J.A. 301[3]. In itself, this failure was a fundamental error.

Subsequent events have shown that the abuse claims are true. On the very date this brief is being filed, the government unsealed an indictment against Julian Assange that was obtained in this grand jury a full year to the day prior to the time Ms. Manning appeared and refused to give testimony. See Exhibit A. Clearly the government did not respond substantively during the motion to quash and contempt proceedings because they knew that the sole and dominant purpose of the subpoena was, in fact, to prepare their case for trial.

Where, as here, it is evident that a witness had nothing to add to a criminal investigation, and where repetitious questioning is in and of itself compelling evidence suggesting that the prosecutor is using the grand jury as a mechanism for pretrial discovery, the Court must , at a minimum, require that the government establish that the subpoena was not issued for an improper purpose. *United States v.*

---

[3] In their opposition to Bail (p. 14), the government appears to make the argument that the substantive arguments were "repeated." In fact, the section of the transcript to which they cite involves not a substantive argument but counsel's pleas to the Court regarding the risks faced by trans women in prison.

*Alvarado,* 840 F.3d 184 (4th Cir. 2016). See also *United States v. Moss, supra,* ("it is the universal rule that prosecutors cannot utilize the grand jury solely or even primarily for the purpose of gathering evidence in pending litigation").

Given the Assange indictment, there is now literally no doubt whatsoever that this concern, raised multiple times, was grounded in fact, and was sufficient to have rebutted the presumption of grand jury regularity. The District Court ought to have required at least some assurances from the government. Instead, they dismissed out of hand the entirely legitimate evidence and concerns of a grand jury witness with substantial rights at stake.

**Point 3: The District Court Erred by Holding the Substance of the Civil Contempt Hearing in a Closed Courtroom.**

Contrary to the government's assertions, the District Court did not entertain extensive argument on the issues raised in Ms. Manning's Motion to Quash. Gov. Opp. at 10. The proceedings on March 5, 2019 lasted less than forty-five minutes. The transcripts of March 6 show one page in which counsel renewed this issue, cited caselaw, and proposed briefing, and a single point at which the District Court summarily concludes that the contempt hearing will be held in a sealed courtroom. On March 8, the Court only perfunctorily considered Ms. Manning's arguments about the propriety of the subpoena itself, and later only perfunctorily opened the courtroom, such that Ms. Manning was deprived of Due Process and a public proceeding.

15

This Court must reverse the finding of contempt entered against Ms. Manning in light of the unnecessary daily closure of the courtroom and the District Court's failure to require the government to demonstrate a specific compelling interest in closure of the courtroom beyond a generalized insistence on secrecy.

The government argues that the general risk of the motions and contempt hearings revealing information occurring before the grand jury justified abrogation of Ms. Manning's rights to Due Process and a public trial. None of the information within the hearings on the Motion to Quash or the entire contempt hearing revealed the substance of any secret information that occurred before the grand jury, a fact confirmed by the subsequent unsealing of nearly all the transcripts.

Courts have recognized that "the purpose in Rule 6(e) is to preserve secrecy. Information widely known is not secret." *In re: North*, 16 F.3d 1234 (D.C. Cir. 1994). *See In re: Charlotte Observer*, 921 F.2d 47, 50 (4th Cir. 1990). Furthermore, the fact that "a grand jury had subpoenaed Chelsea Manning to testify" does not implicated Rule 6(e), because Rule 6(e)(2)(B) does not list "witnesses" as a category of persons who "must not" disclose grand jury matters, and this fact was already publicly known. *In re: Grand Jury Proceedings*, 417 F.3d 18, at 26 (1st Cir. 2005). The courts and public have known for years of the existence of a grand jury investigation into Wikileaks & Julian Assange (*see United States v. Appelbaum*, 707 F.3d 283 (4th Cir., 2013)) and the government itself has disclosed – albeit initially

inadvertently – the existence of an indictment against Julian Assange voted by this very grand jury. *See United States v. Seitu Sulayman Kokayi* (E.D.V.A, Alexandria Div., 1:18-cr-00410, Docket No. 5).

On April 11, 2019, that indictment was unsealed, confirming that it was obtained on March 6, 2018, over a year ago, and it goes without saying that at least the government was aware of, but did not disclose the existence of the already-obtained indictment. The District Court did not take this into account when deciding whether closure of the courtroom was required, and the finding of contempt should be reversed.

Moreover, although the Government's brief suggests that *In re Oliver, 333 U.S. 257 (1948),* is inapplicable to the case at hand because the closed contempt proceeding at issue in *Oliver* occurred in front of a judge grand-jury instead of a traditional grand jury. The Supreme Court in *Oliver* made clear that the specific persons present in the proceeding were irrelevant to the question of whether Due Process was afforded to the witness because "it is certain, however, that the public was excluded—the questioning was secret in accordance with the traditional grand jury method." Id. at 259.

Their reliance on *Levine v. United States* is likewise misplaced. 362 U.S. 610 (1960). In *Levine,* the Supreme Court reiterated that "due process demands appropriate regard for the requirements of a public proceeding in cases of criminal

contempt, as it does for all adjudications through the exercise of the judicial power,

barring narrowly limited categories of exceptions such as may be required by the

exigencies of war or for the protection of children[4]." Id. at 616 (internal citations

omitted). The Fourth Circuit has followed adopted *Levine*, finding that Due Process

rights guaranteed to a defendant by the Fifth Amendment are coextensive with the

rights specified in the Sixth Amendment. *Hartman v. Lee*, 283 F.3d 190, at 194 (4th

Cir., 2002).

The government, citing cases involving non-grand jury civil contempt,

erroneously concludes that the Sixth Amendment right to a public trial does not

apply to contempt proceedings; Ms. Manning now urges this Court to affirm that the

Sixth Amendment right to a public trial is one of the few fundamental rights

implicated in contempt proceedings, and in so finding underscore the principle that

"public access [to courts] promotes not only the public's interest in monitoring the

---

[4] The government asserts that Turner v. Rogers (564 U.S. 431 (2011)) stands for
the proposition that grand jury witness contempt proceedings do not implicate the
Sixth Amendment right to a public trial. Gov Opp. 48. The question the Supreme
Court faced in Turner was whether the Fourteenth Amendment's guarantee of Due
Process required the state of North Carolina to provide counsel at a civil contempt
child support hearing to an indigent person potentially facing incarceration. The
Court's holding in Turner, that when a custodial parent entitled to receive the
support is unrepresented by counsel, the State need not provide counsel to the
noncustodial parent required to provide the support, is irrelevant to the issue of
whether perfunctorily opened contempt proceedings violate the Constitutional
rights of an alleged contemnor to due process and a public trial. Id. at 435.

functioning of the courts but also the integrity of the judiciary." *Doe v. Pub. Citizen*, No. 12-2209 (4th Cir., 2014).

The government argues that the general risk of the motions and contempt hearings revealing information occurring before the grand jury justified abrogation of Ms. Manning's rights to Due Process and a public trial. The District Court did not engage in any analysis balancing grand jury secrecy with Constitutional rights, nor did the District Court require the government to do more than parrot selective language from Rule 6(e) to justify closure of the hearings, the subpoena, and her alleged contempt. (Gov. Opp. At 52)

Courts navigating the tension between the rule imposing secrecy pursuant to Rule 6(e) and the fundamental rights of alleged contemnors and the public have required the government to show that the order imposing secrecy is a "compelling necessity" demonstrated with "particularity." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). This test is in harmony with the holdings of cases in the Fourth Circuit indicating that there is a strong presumption in favor of openness of court hearings, and that "Closed proceedings ... must be rare and only for cause shown that outweighs the value of openness .... The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered" *In re: Knight Pub. Co.*, 743 F.2d 231 (4th Cir. 1984). The government

mischaracterizes the unsealing of the transcripts and records in the District Court

as the result of a thoughtful approach by the District Court, when in fact on March

18, 2019 the government conceded to unsealing of the pleadings and most of the

transcripts but for the few pages that disclose the questions that were asked of Ms.

Manning during the grand jury proceeding. JA 331. The government's concession

to Ms. Manning's Motion to Unseal belies the government's claim that all of the

proceedings with the exception of the final contempt finding were themselves

matters occurring before the grand jury. This Court should reverse the finding of

contempt entered against Ms. Manning as entered in violation of her fundamental

rights.

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that the finding of

contempt be vacated, either permanently, or pending meaningful determination of

the motions denied in error below.

Respectfully submitted,

CHELSEA MANNING

By Counsel

Dated: April 11, 2019

/s/ Chris Leibig

CHRISTOPHER LEIBIG
(VSB#40594)
114 N. Alfred Street
Alexandria, Virginia 22314
703-683-431 O
chris@chrisleibiglaw.com


/s/     Sandra C. Freeman
SANDRA C. FREEMAN
(VSB# 78499)
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
720-593-9004
sandra.c.freeman@protonmail.com

/s/ Moira Meltzer-Cohen
MOIRA MELTZER-COHEN
(*pro hac vice* pending)
277 Broadway, Suite 1501
New York, NY  10007
347-248-6771
mo_at_law@protonmail.com


/s/ Vincent J. Ward
VINCENT J. WARD
(*pro hac vice* pending)
Freedman Boyd Hollander
Goldberg Urias & Ward, P.A
20 First Plaza, Suite 700
Albuquerque, New Mexico
87102
505-842-9960
vjw@fbdlaw.com