UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: Grand Jury Subpoena, | ) | **BENCH BRIEF:** |
| | ) | **REITERATED** |
| CHELSEA MANNING, | ) | **CONTEMPT** |
| | ) | |
| Movant. | ) | **1-19-dm-00012-AJT** |
| _____ | ) | |

## STATEMENT OF MOTION

Comes now Chelsea Manning, by and through counsel, and pursuant to 28

U.S.C. §1826 and applicable law, moves this Court to modify its order confining

her for the term of the grand jury to reflect the settled law limiting to a total 18

months the aggregate term of confinement for reiterated contempts before different

grand juries.

Ms. Manning states the following in support of this request:

## PRELIMINARY STATEMENT

On March 6, 2018, a grand jury sitting in the Eastern District of Virginia

issued an indictment against Julian Assange, the founder of Wikileaks, a website

devoted to radical transparency. Ms. Manning was summoned to appear on March

6, _2019_, one year later, before a grand jury sitting in the Eastern District of

Virginia. Immunity was conferred upon her, stripping her of her 5th Amendment

rights against compelled self-incrimination. After litigation and denial of various

motions to quash, she was brought before the grand jury, and refused to give

testimony.

A contempt hearing was conducted on March 8, 2019. District Court Judge

Hilton found that she lacked just cause for her refusal to testify, found her in

contempt, and remanded her to the jail until such time as she purged her contempt

or the grand jury terminated. She remained confined at the Alexandria Detention

Center for 63 days, 28 of those in conditions amounting to solitary confinement.

On April 11, the indictment against Mr. Assange, in which Ms. Manning is

named throughout as an alleged coconspirator, was made public, demonstrating

that the grand jury had obtained this indictment without the benefit of or apparent

need for Ms. Manning's testimony.

On May 8, 2019, Ms. Manning was served through counsel with a subpoena

to appear before a new grand jury. On May 9, the term of the first grand jury

expired and she was released.

Some time between May 14 and May 16, 2019, the new grand jury

superseded the initial indictment with 17 additional Counts relating to offenses

defined under the Espionage Act. This indictment was also obtained without the benefit of or apparent need for Ms. Manning's testimony.

On May 16, without knowledge of the already-obtained superseding indictment, Ms. Manning appeared before this Court, and moved to quash the new subpoena based upon new information and legal theories stemming from the unsealing of the 2018 indictment.

After being satisfied by the government's limited denials of certain kinds of surveillance, and after admitting that post-indictment subpoenas may be suspect, the Court denied Ms. Manning's motions to disclose electronic surveillance and to quash the subpoena on the basis that it was an abuse of process. Ms. Manning then reiterated her refusal to give testimony before any grand jury.

This Court found her in contempt, imposed certain fines to be periodically assessed, and ordered Ms. Manning to be confined "for the term of the grand jury." Counsel inquired as to the Court's understanding of the law with regard to the cumulative time limits on coercive confinement, and the Court directed counsel to brief the issue.

What follows is a brief on the state of the law, and it is counsel's belief that the government joins in the conclusion that the cumulative length of confinement

considered appropriate by congress, even in the event of reiterated contempts, is no more than 18 months.

## ARGUMENT

I.      Civil contempt may only be coercive, and any civil sanction that becomes punitive must be terminated.

When refusing to testify before a grand jury, any resultant period of confinement "shall not exceed the life of (1) the court proceeding or (2) the term of the grand jury, including extensions before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed 18 months." 28 U.S.C. § 1826.

Civil, as opposed to criminal confinement, assumes that the contemner has "the keys of the prison in his own pocket,' as continued confinement is conditioned upon the conduct of the contemnor. In Re Nevitt, 117 F. 448, 461 (8th Cir. 1902), Shillitani v. U.S., 86 S.Ct. 1531 (1966). Thus, under both the common law governing the court's traditional contempt powers, and its codification in 28 U.S.C. §1826, civil confinement is intended *only* to be coercive.

This coercive impact is the *sine qua non* of civil contempt, and ensuring that a civil contempt exerts only a coercive, and never a punitive effect, is the primary imperative by which every judge must abide. Simkin v. U.S., 715 F.2d 34 (2d Cir.

1983) at 38. Therefore, in the event that there is no possibility of purging contempt, either because the grand jury has ended, or because the witness is incoercible, then the confinement serves no further lawful purpose, and the witness must be released. 28 U.S.C. §1826, <u>Shillitani v. United States</u>, 384 U.S. 364 (1966); <u>Armstrong v. Guccione</u>, 470 F.3d 89, 111 (2d Cir. 2006).

Likewise, at some point, the length or conditions of confinement, or any another sanction, may become *per se* punitive. At that point, the sanction must be terminated, as it has exceeded the bounds of a civil sanction and become a punishment without due process of law.

II.      Origins of the eighteen-month maximum term of civil confinement

The imposition of a statutory time limit with respect to civil confinement first emerged during debate over the Recalcitrant Witness Statute, 28 U.S.C. §1826, in 1969, when the Organized Crime Control Act of 1969 was brought before Congress. The legislative history associated with 28 U.S.C. §1826 is instructive. See S. REP. NO. 617, 91st CONG., 1st Sess. 148-49 (1969).

In the original draft of 28 U.S.C. §1826, there was no limit to the length of confinement faced by recalcitrant witnesses. Douglas C. Berman, Note, Coercive Contempt and the Federal Grand Jury, 79 COLUM. L. REV. 735, 739 (1979).

However, in committee many Congresspeople raised concerns about the constitutionality of a law that permitted indefinite civil detention, and the likelihood that a long confinement would at some point exceed its coercive effect. One member noted that "(i)t seems clear that after a certain period of time (the witness is) going to continue to refuse (to testify). There is no reason to compound the punishment . . ." Hearings Before the Subcommittee on Criminal Laws and Procedures of the Committee on the Judiciary on the Organized Crime Control Act of 1969, United States Senate, 91st Cong., 1st Sess. 352 (remarks of Frank Hogan), at 484. Mr. Hogan was joined by Lawrence Speiser, who opined: "Where a witness is subjected to a three year confinement and is willing to suffer that, rather than testify, it becomes clear that coercion is inadequate .... The imprisonment has ceased to be coercive and has become punitive." *id*., at 463.

Although a discrete time limitation on confinement neither inhered in the court's common law contempt powers, nor was included in the draft legislation of what became §1826, the records of hearings clearly indicate that Congress viewed the recently decided <u>Shillitani</u> case as having set such a limit at 18 months. See Senate Hearings, supra note 149, at 264; id. at 371. The basis for that limit was that confinement exceeding 18 months could be considered necessarily punitive, and

beyond the bounds of a civil sanction. Thus, the language of the proposed and eventually enacted statute was amended to contain the clause "but in no event shall such confinement exceed eighteen months." 28 U.S.C. 1826.

The Organized Crime Control Act also introduced special grand juries that could have terms of up to thirty-six months. Since prior to this legislation grand jury terms could not extend over 18 months (see FED. R. CRIM. P. 6(g)), this might have had the effect of doubling the exposure of recalcitrant grand jury witnesses called before special grand juries. In re THORNTON, No. M-11-188, 1983 U.S. Dist. LEXIS 14826, at *4-5 (S.D.N.Y. Aug. 8, 1983). Nevertheless, Congress included the eighteen month limit, in order to safeguard the mandate that civil sanctions may not lapse into the realm of punishment. While the contemnor holds the keys to their cell, Congress seemed to say, once confinement exceeds 18 months, it is clear that those keys are not in fact meaningfully accessible to the contemnor, whose hands may be bound by some principle other than the law. Congressional intent here is noncontroversial: they intentionally limited the term of civil confinement to "no more than 18 months."

III.    Reiterated contempts and the 18 month limit

Significantly, a contemnor may be held in contempt before a potentially

unlimited number of grand juries. In re Grand Jury Proceedings, 469 F. Supp. 171,

172 n.1 (E.D. Mich. 1979). Because jeopardy does not attach in civil proceedings,

"it does not offend the Constitution to imprison a person twice for refusing to

answer questions as to the same subject matter before two successive grand juries."

Id., at 173. However, based on the plain language of §1826, courts have refused to

endorse coercive confinements that span, in the aggregate, longer than 18 months.

United States v Jones, (1989, CA7 Ill) 880 F2d 987 (affirming the judgment of the

district court but modifying the court's order to put a cap of eighteen months on the

aggregate period of civil confinement).

Even in the event of successive confinements and reiterated contempts, "in

no circumstances should a witness serve more than eighteen (18) months for

refusing to testify, regardless of how many grand juries are involved." In re Grand

Jury Proceedings, supra, at 175.

The rationale here is identical to that underlying the 18 month rule generally;

beyond that amount of time confinement is simply assumed, as a matter of

Congressional policy, to have become punitive, and thus to have exceeded the

lawful scope of civil confinement. "[A]t some point," holds <u>In re Grand Jury</u>

<u>Proceedings</u>, "the balance must be struck between society's need for testimony and

an individual's liberty. Congress has struck the balance and I will not disturb it."

469 F. Supp. 171 at 175.

This "balance" is again discussed in <u>In re Grand Jury Investigation</u>, which is

worth quoting at length.

> "28 U.S.C. §1826(a), embodies a legislative balance between two
> competing values. On the one hand, it preserves the efficacy of the civil
> contempt power … [o]n the other hand, it meets the concern that the civil
> contempt power not be abused by employing it to punish an
> intractable witness beyond that point where it becomes evident that his
> testimony cannot be coerced through further confinement. 600 F.2d 420,
> 426-27 (3d Cir. 1979).

It is clear is that Congress considered the relationship of the civil contempt to the

extension of the grand jury term to thirty-six (36) months, approved

the successive impositions of civil contempt before different grand juries, and

nevertheless included the "in any event not more than 18 months" clause in §1826.

Accordingly, courts customarily approve the successive imposition of contempt

sanctions, providing they do not collectively exceed eighteen months.

There also seems to be a generalized disapproval of seeking successive contempt sanctions when a recalcitrant witness has already been incarcerated for refusing to testify before the grand jury, particularly where, as here, the matters under investigation by each grand jury are identical. 1-5 Federal Grand Jury Practice and Procedure, §5.02 (2007).

<u>CONCLUSION</u>

Because civil contempt sanctions may not become punitive, Congress imposed an 18 month time limit on the length of civil confinement. This has been understood to apply to successive contempts and aggregate lengths of confinement spanning more than one grand jury. Courts must take pains not to punish civil contemnors. For that reason, this Court must, at the very least, modify its order to comport with the statutory 18 month limit to aggregate confinement.

Respectfully submitted,
By Counsel

Dated: May 28, 2019

> */s/ Moira Meltzer-Cohen*
> MOIRA MELTZER-COHEN
> *(pro hac vice)*
> 277 Broadway, Suite 1501
> New York, NY 10007
> 347-248-6771
> mo_at_law@protonmail.com

/s/ *Sandra Freeman*
SANDRA C. FREEMAN (VSB# 78499)
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
720-593-9004
sandra.c.freeman@protonmail.com

/s/ *Chris Leibig*
CHRISTOPHER LEIBIG (VSB#40594)
114 N. Alfred Street
Alexandria, Virginia 22314
703-683-4310
chris@chrisleibiglaw.com

/s/ Vincent J. Ward
VINCENT J. WARD
*(pro hac vice pending)*
Freedman Boyd Hollander Goldberg Urias
& Ward,
P.A
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
505-842-9960
vjw@fbdlaw.com