UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | | |
|---|---|---|
| In re: Grand Jury Subpoena, | ) | **MOTION TO** |
| | ) | **RECONSIDER** |
| CHELSEA MANNING, | ) | **SANCTIONS** |
| | ) | |
| Movant. | ) | **1-19-dm-00012-AJT** |
| | ) | |

STATEMENT OF MOTION

Comes now Chelsea Manning, by and through counsel, and pursuant to 28 U.S.C. §1826 and applicable law, moves this Court to reconsider and appropriately modify the sanctions imposed upon her, such that the remaining sanctions, if any, do not exceed their lawful civil function as coercive, and not punitive sanctions.

Ms. Manning states the following in support of this request:

PRELIMINARY STATEMENT

On March 6, 2018, a grand jury sitting in the Eastern District of Virginia issued an indictment against Julian Assange, the founder of Wikileaks, a website devoted to radical transparency. The indictment was a one-count indictment charging Conspiracy to Commit Computer Intrusion. Ms. Manning was summoned to appear on March 6, *2019*, exactly one year later, before a grand jury sitting in

the Eastern District of Virginia. After litigation and denial of various motions, she was brought before the grand jury, and refused to give testimony. Finding no "just cause" for her refusal, District Court Judge Hilton found her in contempt, and remanded her to the Alexandria Detention Center.

On April 11, 2019 the indictment against Mr. Assange, in which Ms. Manning is named throughout as an alleged coconspirator, was made public, demonstrating that the grand jury had obtained this indictment without the benefit of or apparent need for Ms. Manning's testimony.

On May 9, the term of the first grand jury expired and she was released, however, on May 8, Ms. Manning was subpoenaed to appear before a new grand jury on May 16th.

Some time between May 14 and May 16, 2019, Julian Assange was charged in a superseding indictment with 17 Counts relating to offenses under the Espionage Act. This indictment was also obtained without the benefit of or apparent need for Ms. Manning's testimony.

On May 16, without knowledge of the already-obtained superseding indictment, Ms. Manning appeared before this Court, and moved to quash the new

subpoena. When this Court denied Ms. Manning's motions, she reiterated her refusal to give testimony before any grand jury.

The Court found no just cause for her refusal, held her in contempt, ordered her confined once again, and in addition, imposed fines to be assessed at a rate of $500.00 per day after 30 days, and $1000.00 per day after 60 days.

## ARGUMENT

I.     Civil contempt sanctions may only be coercive. Ms. Manning's confinement is not coercive, and must be terminated.

As argued during the May 16 contempt hearing, confining Ms. Manning at all exceeds the lawful scope of the contempt sanction as codified in 28 U.S.C. §1826. This is because confinement (and any other sanction) may only be lawfully imposed if it is likely to exert any coercive effect on Ms. Manning's determination not to testify. Ms. Manning has strong objections to the grand jury process, and she also has the courage of her convictions. As she is incoercible, confinement will not serve its sole lawful purpose to coerce compliance; it will only serve to punish her. Ms. Manning's confinement must therefore be terminated.

The civil contempt sanction is one that may be imposed without the protections afforded criminal defendants. This is because the confinement is conditioned upon the contemnor's own conduct. Shillitani v. U.S., 86 S.Ct. 1531

(1966). Thus, under both the common law governing the court's traditional contempt powers, and its codification in 28 U.S.C. §1826, civil confinement is intended *only* to be coercive. "If a judge orders continued confinement without regard to its coercive effect upon the contemnor, or as a warning to others who might be tempted to violate their testimonial obligations, he has converted the civil remedy into a criminal penalty." <u>Simkin v. U.S.</u>, 715 F.2d 34 (2d Cir. 1983) at 38. That is, civil sanctions may not, under any circumstances, be used as a deterrent to other potentially recalcitrant witnesses. In the event that there is no possibility of purging contempt, either because the grand jury has ended, or because the witness is incoercible, then the confinement serves no further lawful purpose, and the witness must be released. 28 U.S.C. §1826, Shillitani v. United States, 384 U.S. 364 (1966); <u>Armstrong v. Guccione</u>, 470 F.3d 89, 111 (2d Cir. 2006).

Turning directly to the legislative history of the recalcitrant witness statute, we see in fact that "[a] court is free to conclude at any time that further incarceration of a recalcitrant witness will not cause the witness to relent and testify, and, upon such grounds, to release the witness from confinement." <u>Grand Jury Reform: Hearings on H.R. 94 Before the</u> <u>Subcomm. On Immigration, Citizenship, and International Law of the House</u>

Comm on the Judiciary, 95th Cong., 1st Sess. 713 n. 1 (1977) (statement of

Asst. Atty. Gen. Civiletti). While the district judge retains "virtually

unreviewable discretion" as to determinations on a witness' intransigence,

all relevant rulings have made clear that such deference can be extended

"only if it appears that the judge has assessed the likelihood of a coercive

effect upon the particular contemnor. *There must be an individualized*

*decision, rather than application of a policy…*" Simkin at 37, emphasis

added. *See also* In re Cocilovo, 618 F.Supp. 1378 (S.D.N.Y. 1985); In re

Papadakis, 613 F.Supp. 109 (S.D.N.Y. 1985); U.S.v. Buck, U.S. v. Shakur,

1987 WL 15520 (S.D.N.Y. 1987); United States v. Whitehorn, 808 F.2d 836

(4th Cir. 1986); In re Cueto, 443 F. Supp. 857 (S.D.N.Y. 1978).

　　　Several factors play into the individualized determination of a

witness's intransigence. These include the length of confinement, the

witness's connection with the activity under investigation, the continued

need for the witness's unique evidence, the articulated moral basis for the

refusal, the witness's perception of community support, and the witness's

conduct and demeanor. In re Dorie Clay, 1985 WL 1977 (S.D.N.Y. 1985); In

re Grand Jury Proceedings, 994 F. Supp. 2d 510, 515 (S.D.N.Y. 2014). These

are factors that have been used as the basis for judges' individualized assessments, although the weight, or even the presence of each factor in any given inquiry appears to be entirely at the discretion of the judge.

Typically, motions such as this focus on demonstrating the intransigence of the witness, because the legitimacy of the government's need for that witness's testimony tends not to be in doubt. Clay, supra, at 4, (Intransigent contemnor released *despite* the need for her unique and relevant testimony); see also In re Thomas, 614 F.Supp. 983 (S.D.N.Y. 1985); In re Grand Jury Proceedings, *supra* (contemnor released on basis that there existed no reasonable possibility that he would agree to testify). However, where the need for a witness' unique evidence is diminished or is in question, a new and somewhat differently-focused inquiry is warranted into whether a sanction is coercive or punitive. In re Dohrn, 560 F.Supp. 179 (S.D.N.Y. 1983) (Witness released despite Judge's antipathy, based on not only the intransigence of her beliefs *but also the diminished need for her cooperation*).

Such is the case at bar. Ms. Manning has publicly articulated the moral basis for her refusal to comply with the grand jury subpoena, in

statements to the press, in open court, and most recently, in a letter addressed

to this Court. See Exhibit A. She is suffering physically and psychologically,

and is at the time of this writing in the process of losing her home as a result

of her present confinement. She has made clear she prefers to become

homeless rather than betray her principles. Her intransigence, at this point, is

not reasonably in question. What is in doubt, however, is the government's

need for her testimony.

The government has now indicted Mr. Assange on 18 very serious

counts, without the benefit of or apparent need for Ms. Manning's testimony.

The government's extradition packet must be submitted in finalized form

very soon. Any investigation of him after that point will be nugatory. United

States v. Moss, 756 F.2d 329, 331-32 (4th Cir. 1985), see also United States

v. Kirschner, 823 F. Supp. 2d 665, 667 (E.D. Mich. 2010)(finding that post-

indictment questioning about the same conduct but *different* charges than

those in the indictment was permissible, but questioning leading only to

further information about the same charges would be impermissible). Any

further investigation of unindicted targets will likewise be futile, as charges

would be time-barred, and in any case, it is perfectly understood that Ms.

Manning has no useful information about any parties other than the person

behind the online handle "pressassociation." She is not possessed of any that

is not equally available to them, and in any case, her absence has posed no

obstacle to indictment and superseding indictment.

Ms. Manning's convictions are no longer seriously in question. What

remains to be seen is whether the government can claim with a straight face

to have an ongoing need for her testimony. After the submission of the

extradition packet, the need for Ms. Manning's testimony will diminish so

precipitously that it will be difficult to characterize her ongoing refusal to

testify as contumacious.

Ms. Manning is sincere and intractable in her refusal. Moreover, she

reasonably believes that the government does not actually require her

testimony, and therefore any effort on her part to purge her contempt would

be meaningless. There is no incarceratory sanction that will coerce her, and

no jail term that she will not endure, even at great harm to herself. The

incarceration sanction currently imposed, therefore, is merely punitive, and

must be terminated. The Court implicitly recognized the sincerity and

intractability of her beliefs, and therefore sought to impose a financial

penalty based on their understanding that the jail sanction is not coercive.  If

the Court recognizes the futility of further confinement, and wishes instead

to try a new tactic, it must terminate the sanction already determined to have

been unsuccessful.

II.     Civil contempt sanctions may only be coercive, and any civil sanction
imposed must be reasonably calculated to exert a coercive impact without
being punitive.

        Ms. Manning has now been exposed not only to incarceration, but to

fines. As with any civil sanction, a fine must be reasonably calculated to

exert a coercive but not a punitive effect, lest it outgrow its lawful bounds.

At the contempt hearing on May 16, this Court, after inquiring whether

monetary fines were within its traditional contempt powers, imposed fines on

Ms. Manning of $500 per day after 30 days, and $1000 per day after 60

days. The total amount of fines to be assessed after Ms. Manning persists in

her refusal for the next 16 months, is over $440,000.00.

A.     Fines must be individually calculated with respect to a contemnor's
financial capacity.

        In order to confirm that a fine will be coercive and not punitive, courts

must weigh the fine against the individual financial capacity of the

contemnor. The Court did no such assessment.

Should this Court wish to enforce a fine, it must conduct an inquiry into Ms. Manning's current worth, and what she may earn during the time she is to be held in contempt. The Supreme Court has suggested that when imposing a fine, the courts must consider (1)"the character and magnitude of the harm threatened by continued contumacy"; (2)"the probable effectiveness of any suggested sanction in bringing about the result desired"; and (3)"the amount of defendant's financial resources and the consequent seriousness of the burden to that particular defendant." United States v. United Mine Workers of Am., 330 U.S. 258, 304, 67 S. Ct. 677, 701, 91 L. Ed. 884 (1947). Courts have relied on this case for the proposition that they have nearly unlimited powers to imposed civil contempt fines. However, because part of the calculus must involve the determination that a civil fine remains only coercive, the individualized assessment of a civil financial burden must be even more carefully figured by the court.

To fine Ms. Manning more than she can actually pay under her own steam is *per se* punitive. It is axiomatic that a fine would be improper were the contemnor be "financially unable to make such payments." See Federal Home Loan Mortg. Corp. v. Berbod Realty Assocs., L.P., (S.D.N.Y. 1994).

Just as a court should not impose a contempt on a party when compliance

with a court order is impossible, neither should they impose sanctions a

contemnor is unable to satisfy. United States v. Rylander, 460 U.S. 752, 757,

(1983). Although the burden rests with the contemnor to show inability to

comply, they must have an opportunity to show that they cannot, and to

demonstrate the degree to which they could comply. A hearing should be

ordered by the court.

B.     Fines assessed against individuals, where the underlying contempt
does not involve financial contempt, may be *per se* punitive.

Furthermore, while imposing fines does lie within the traditional

contempt powers of the court, it is generally reserved for corporations,

which cannot be confined, and which have the capacity to absorb a fine

without suffering, for example, homelessness. Rarely, individuals are fined,

but counsel can find no case in which fines were assessed as to an individual

other than where the individual was a sophisticated financial actor and the

underlying contempt involved disobedience of a court order directing the

management of a large amount of money. Schutter v. Herskowitz, No.

07-3823, 2008 U.S. Dist. LEXIS 91424, at *2 (E.D. Pa. Nov. 6, 2008) (the

dispute involves an escrow fund of over $100,000.00); Carpenters Health &

Welfare Fund of Phila. & Vicinity v. Special Servs. for Bus. & Educ., Inc.,

No. 09-CV-4701, 2011 U.S. Dist. LEXIS 58771, at *2-3 (E.D. Pa. May 31,

2011) (defendant company fined for refusing to account for delinquent

contributions due and owing to Plaintiffs); New York State Nat'l Org. for

Women v. Terry, 886 F.2d 1339, 1351 (2d Cir. 1989) (the director of

Operation Rescue was fined in his individual capacity, but was profiting as a

direct result of his contumacious conduct).

    In fact, while the contemporary use of the fine as "a conditional

penalty designed to coerce compliance" is an accepted type of sanction, its

recent common use has been described as "a modern novelty." CONTEMPT

SANCTIONS AND THE EXCESSIVE FINES CLAUSE, 76 N.C.L. Rev.

407, 438.  As noted, such fines are almost exclusively applied to

corporations, their officers, or individuals whose contempt is directly related

to contumacious financial malfeasance. The purposes of these fines are to

coerce compliance, to compensate any pecuniary loss caused by the

contemnor, and/or to divest them of gains acquired as a result of the

contempt. This suggests that fines imposed upon individual contemnors, who

are not either the representatives of a corporation or the trustees of a

substantial sum, are disfavored. That is, it appears that courts have

intuitively recognized that assessing fees against contemnors in their

capacity as individual human beings may be *per se* punitive. There is no

doubt that courts have shied away from imposing overly steep civil fines, in

light of the Eighth Amendment prohibition against excessive fines, which

applies as equally to coercive as to criminal fines. <u>Austin v. United States</u>,

509 U.S. 602, 607-11, 113 S. Ct. 2801, 2804-06 (1993).

C.      Concurrent use of fines and confinement is almost always *per se*
punitive.

        The issue of whether the fines are punitive is further complicated by

the fact that Ms. Manning is concurrently also confined under the contempt

sanction. Other courts agree that while fines and confinement may be used

alternatively or successively, they may not be imposed simultaneously. Some

courts, for example, have fashioned a coercive penalty of accruing fines

limited in duration by the possible imposition of incarceration. <u>Acosta v. N</u>

<u>& B Lundy Corp.</u>, No. 4:16-MC-00396, 2017 U.S. Dist. LEXIS 67262, at *8

(M.D. Pa. May 3, 2017). Other courts have held that fines and incarceration

are simply not to be used concurrently, as to do so is *per se* punitive. <u>In re</u>

Grand Jury, 529 F.2d at 551 (fines or imprisonment in civil contempt should

be used interchangeably or successively but not simultaneously in the

absence of findings supported by the record showing the necessity for such

severe actions).

Conclusion

As Ms. Manning's resolve not to testify has been unwavering, and as the

government's legitimate need for is called into question, there is no appropriately

coercive sanction, and she must be released from jail and relieved of all fines. In

the alternative, she must be released from detention, and/or fines must be

calculated according to her individual financial capacity; in any event, she must not

be subject simultaneously to both confinement and fines, and an inquiry must be

conducted to determine and curb the potential punitive impact of fines. For those

reasons, the motion should be granted.

Respectfully Submitted,
By Counsel

Dated: May 30, 2019

*/s/ Moira Meltzer-Cohen*
MOIRA MELTZER-COHEN

*(pro hac vice)*
277 Broadway, Suite 1501
New York, NY 10007
347-248-6771
mo_at_law@protonmail.com

/s/ *Sandra Freeman*
SANDRA C. FREEMAN (VSB# 78499)
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
720-593-9004
sandra.c.freeman@protonmail.com

/s/ *Chris Leibig*
CHRISTOPHER LEIBIG (VSB#40594)
114 N. Alfred Street
Alexandria, Virginia 22314
703-683-4310
chris@chrisleibiglaw.com

/s/ Vincent J. Ward
VINCENT J. WARD
*(pro hac vice pending)*
Freedman Boyd Hollander Goldberg Urias
& Ward,
P.A
20 First Plaza, Suite 700
Albuquerque, New Mexico 87102
505-842-9960
vjw@fbdlaw.com