UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re: Grand Jury Subpoena, ) | |
| ) | **DECLARATION** |
| CHELSEA MANNING, ) | |
| ) | **1-19-dm-00012-AJT** |
| Subpoenaed Party. ) | |
| _____) | |

1. My name is Chelsea Elizabeth Manning. I am competent to be a witness, and I possess personal knowledge of the facts set forth below.

2. As a result of the finding of civil contempt on May 16, 2019 after reiterating my refusal to provide testimony before a grand jury convened in this District, I am now confined at the Alexandria Detention Center ("ADC"), in Alexandria, Virginia. Previously, from March 9 through May 9, 2019, I spent additional time confined at ADC.

3. I have repeatedly explained that after giving exhaustive testimony elsewhere, following a thorough forensic investigation, I do not have any new or unique information about anything that would be the proper subject of a grand jury investigation.

4. I have already testified to these events in the past, and my testimony would remain the same now. I object to the apparent use of the grand jury for what I strongly suspect are impermissible purposes.

5. More importantly, I object to the institution of the grand jury itself.

6. Previously, I detailed my position opposing grand juries in my letter to this Court, dated May 31, 2019. In the nine months that have since transpired, my position has not changed, and is if anything stronger than before.

7. My refusal to testify continues, predicated on my longstanding belief that grand juries, as they function in the contemporary era, are often used by federal prosecutors to harass and disrupt political opponents and activists through secrecy, coercion, and jailing without trial.

8. My own current confinement reinforces my belief in their tendency to be abused in practice.

9. This abuse of the grand jury, in my opinion, violates the principle (if not the letter) of double jeopardy, in that while not charged with any offenses, I remain confined as a result of this administration's ongoing desire to punish me further for acts I already faced trial and imprisonment for.

10. Throughout U.S. history, prosecutorial powers have greatly expanded while oversight and transparency were eroded, leading to rampant selective enforcement of grand jury subpoenas against dissident groups.

11. I view grand jury practice, and in particular the use of coercive confinement, as a mechanism used to exert pressure on and punish certain people and groups when criminal prosecution is not an option because there is no unlawful conduct on their part.

12. Likewise, these sanctions are rarely enforced against others with political connections or ties to powerful people. For example, the Attorney General was in contempt of a congressional subpoena but faced no consequences. The President has been instructing his associates not to comply with grand jury subpoenas and witness subpoenas for at least two years, and has even fired people for their compliance with subpoenas. It is clear that the rules are different for different people, and this is enabled by the vast power, secrecy, and discretion that are built into the grand jury process.

13. I cannot agree to participate in such a process.

14. I have read and understand the expert report of Dr. Sara Boyd. I agree with her assessment that I am not interested in or affected by the negative judgements of people whose values I do not share, or the punishments they may impose on me.

15. I have read and understand the letter by U.N. Special Rapporteur Nils Melzer. I believe that the U.S. government must honor legally binding international conventions, and I agree with S.R. Melzer's analysis that the U.S. is disrespecting that obligation by using coercive confinement. I also agree with his conclusion that confinement and fines cannot coerce me into testifying and that these sanctions are serving no coercive purpose.

16. Over the last decade, I have endured years of imprisonment, harassment, and hardship, both as a result of my actions and because of who I am.

17. My actions are my own and my decisions to act are made on principle.

18. I accept responsibility for my actions and I do not disclaim my actions or my identity, because to do so would violate my principles.

19. I understand that my strong personal convictions and strict adherence to my principles may bring consequences. I have always accepted those consequences, even though they put a strain on my life.

20. From May 27, 2010 to May 17, 2017, I spent almost ten years in prison for my 2010 disclosures, including over three years of pretrial confinement and nearly a years in solitary confinement.

21. Despite President Obama's commutation of my unprecedented sentence in January 2017, I understand that many in the U.S. government and political establishment remain outraged at my release.

22. During my prison sentence, I fought for years seeking access to clinically necessary gender-affirming care. At the time, I suffered for years through anxiety and depression while waiting desperately for access. However, throughout the overwhelming pain and the length of time, I never wavered in my principles, for my own sake and the sake of all others in similar situations.

23. Now, after more than eleven months and approximately 62% of the 18 month maximum term of confinement, I am prepared to spend the next seven months at the ADC.

24. Also, I know I may likely suffer, and may never recover completely from the hundreds of thousands of dollars in fines that have been imposed upon me. Knowing that I may never have a stable income and will have an uphill battle to pay an essentially permanent debt will still never induce me to betray my values.

25. I am aware that the sanctions imposed on me are intended to pressure me to give up. They are not now and will never be effective.

26. No matter how much I am pushed, sanctioned, and outright punished, I will remain confident in my decision.

27. I have been separated from my loved ones, deprived of sunlight, and could not even attend my mother's funeral. It is easier to endure these hardships now than to cooperate to win back some comfort, and live the rest of my life knowing that I acted out of self-interest and not principle.

28. Confining me, and fining me large amounts of money that I can't pay, will not change my principles.

29. I will never capitulate.

>   I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Dated: February 18, 2020
       Alexandria, VA

_Chelsea Manning_
Chelsea Elizabeth Manning