PALAIS DES NATIONS • 1211 GENEVA 10, SWITZERLAND

**Mandate of the Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment**

REFERENCE:
AL USA 22/2019

1 November 2019

Excellency,

I have the honour to address you in my capacity as Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment, pursuant to Human Rights Council resolution 34/19.

In this connection, I would like to bring to the attention of your Excellency's Government information I have received regarding the use of civil contempt sanctions to detain and fine, **Ms. Chelsea Manning,** allegedly to coerce compliance with grand jury procedures. She is currently detained in William G. Truesdale Adult Detention Center in Alexandria, Virginia.

Ms. Manning was the subject of an urgent appeal sent by my predecessor on 30 December 2010 (UA 20/2010), with regard to allegations of prolonged solitary confinement during her pre-trial detention, reportedly imposed in an effort to coerce her to testify against her will. In follow-up to the reply by your Excellency's Government to that letter, and after holding several discussions with the then Legal Advisor of the Government and key officials from the Departments of Defence and State, a further letter was sent to the Government on 16 June 2011 (AL 8/2011). The letter expressed concern over the refusal by the relevant authorities to allow private, unmonitored and privileged communications in accordance with the terms of reference and working methods of the mandate. Furthermore, concern over restrictive conditions for prisons visits and for interviews with inmates was the subject of a press statement by the mandate holder on 12 July 2011. Convicted and sentenced to 35 years of imprisonment in 2013, Ms. Manning's sentence was commuted to 7 years of total confinement in January 2017.

While I welcome Ms. Manning's subsequent release in May 2017, I am deeply concerned at the new allegations outlined below.

According to the information received:

In March 2019, Ms. Manning was summoned to appear and give testimony before a federal grand jury convened in the Eastern District of Virginia. The grand jury was reportedly assembled for the purpose of investigating numerous reporters, national security journalists, domestic and international publishers and freedom of information activists.

Ms. Manning objected to the subpoena and raised a number of legal challenges to its legitimacy. On 8 and 16 May 2019, having unsuccessfully requested the subpoena to be withdrawn or quashed, she was found to be in civil contempt of

the court's order to appear before the grand jury. Since then, Ms. Manning has been confined at William G. Truesdale Adult Detention Center in Alexandria, Virginia, with the aim of coercing her to testify. In addition, she has been subject to a daily fine, for the first thirty days at a rate of USD 500 and thereafter at the rate of USD 1000 for each day she refuses to give testimony. The duration of such coercive detention is reportedly limited to the duration of the grand jury, namely 18 months, but could be perpetuated indefinitely with the subsequent establishment of successive grand juries.

While I do not wish to prejudge the accuracy of these allegations, I express serious concern at the reported use of coercive measures against Ms. Manning, particularly given the history of her previous conviction and ill-treatment in detention. It is my understanding that the practise of coercive deprivation of liberty for civil contempt under the Recalcitrant Witness Statute, 28 U.S.C § 1826, involves the intentional infliction of progressively severe mental and emotional suffering for the purposes of coercion and intimidation at the order of judicial authorities. Indeed, victims of prolonged coercive confinement have demonstrated post-traumatic symptoms and other severe and persistent mental and physical health consequences.

Based on these elements I conclude that such deprivation of liberty does not constitute a circumscribed sanction for a specific offence, but an open-ended, progressively severe measure of coercion fulfilling all the constitutive elements of torture or other cruel, inhuman or degrading treatment or punishment. In my view, such measures do not fall under the "lawful sanctions" exception of Article 1 CAT, but are contrary to the absolute, non-derogable and peremptory prohibition of torture and, therefore, should be discontinued and abolished without delay. More specifically, the practice of coercive detention appears to be incompatible with the international human rights obligations of the United States under, inter alia, Articles 1, 2, 15 and 16 of the Convention against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment (CAT), as well as under Articles 2, 7 and 9 of the International Covenant on Civil and Political Rights (ICCPR); ratified by the United States of America in 1994 and 1992 respectively.

I would also draw the attention of your Excellency's Government to paragraph 8a of Human Rights Council Resolution 16/23, which reminds States that "Intimidation and coercion, as described in article 1 of the Convention against Torture, (…) can amount to cruel, inhuman or degrading treatment or to torture."

In connection with the above alleged facts and concerns, please refer to the **Annex on Reference to international human rights law** attached to this letter which cites international human rights instruments and standards relevant to these allegations.

As it is my responsibility, under the mandate provided to me by the Human Rights Council, to seek to clarify all cases brought to my attention, I would be grateful for your observations on the following matters:

1. Please provide any additional information and/or comment(s) you may have on the above-mentioned allegations.

2. Please provide information concerning the factual and legal grounds for subjecting Ms. Manning to continued deprivation of liberty and daily fines, especially after her categorical and persistent refusal to give testimony demonstrates the lack of their coercive effect;

3. Please provide information on how such coercive measures, which do not constitute circumscribed criminal sanctions, but which appear to intentionally inflict progressively severe suffering and financial pressure for the purpose of coercing individuals to testify against their conscience, are compatible with the international human rights obligations of the United States and, most notably, the absolute and non-derogable prohibition of torture and ill-treatment as provided for, inter alia, in the ICCPR and the CAT.

4. Please explain what are the legal consequences when it is demonstrated that the contemnor is not coercible and will not testify against his or her conscience, thus defeating the purported purpose of his or her incarceration?

5. Please provide information on the measures taken to ensure the physical and mental integrity of Ms. Manning, as required under ICCPR and CAT

I would welcome receiving clarification to these questions at your earliest convenience, as the allegations described in this letter warrant urgent attention, and may have serious adverse consequences for Ms. Manning's rights and integrity.

This communication and any response received from your Excellency's Government will be made public via the communications reporting [website](website) within 60 days. They will also subsequently be made available in the usual report to be presented to the Human Rights Council.

While awaiting a reply, I recommend that Ms. Manning's current deprivation of liberty be promptly reviewed in light of the United States' international human rights obligations. Should my assessment regarding its purely coercive purpose be accurate, I recommend that Ms. Manning be released without further delay, and that any fines disproportionate to the gravity of any offence she may have committed be cancelled or reimbursed.

I intend to publicly express my concerns in the near future as, in my view, the information upon which my concerns are based is sufficiently reliable to indicate a matter warranting prompt attention. I also believe that the wider public should be alerted to the potential human rights implications of these allegations. Any public expression of

concern on my part will indicate that I have been in contact with your Excellency's Government's to clarify the issue/s in question.

Please accept, Excellency, the assurances of my highest consideration.

Nils Melzer
Special Rapporteur on torture and other cruel, inhuman or degrading treatment or punishment

**Annex**
**Reference to international human rights law**

In connection with above alleged facts and concerns, I would like to draw the attention of your Excellency's Government to the relevant international norms and standards that are applicable to the issues brought forth by the situation described above.

In particular, I would like to remind your Excellency's Government of the absolute and non-derogable prohibition of torture and other cruel, inhuman or degrading treatment or punishment as codified in articles 2 and 16 of the Convention against Torture and other Cruel, Inhuman or Degrading Treatment or Punishment (CAT) which the United States of America ratified on 21 October 1994. As well as, Article 7 of the International Covenant on Civil and Political Rights, to which the United States of America became a party to on 8 June 1992, provides that "[n]o one shall be subjected to torture or to cruel, inhuman or degrading treatment or punishment."

I would like to further remind your Excellency's Government of the absolute and non-derogable prohibition of torture and other cruel, inhuman or degrading treatment or punishment, as an international norm of jus cogens, and as reflected inter alia, in Human Rights Council Resolution 25/13 and General Assembly Resolution 68/156, which "[c]ondemns all forms of torture and other cruel, inhuman or degrading treatment or punishment, including through intimidation, which are and shall remain prohibited at any time and in any place whatsoever and can thus never be justified, and calls upon all States to implement fully the absolute and non-derogable prohibition of torture and other cruel, inhuman or degrading treatment or punishment".

With regards to deprivation of liberty as a coercive sanction rather than as a disciplinary sanction, I would like to highlight that it can amount to torture as defined in Article 1 of the CAT, which states that "torture means any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or a third person information or a confession, punishing him for an act he or a third person has committed or is suspected of having committed, or intimidating or coercing him or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity, it does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions".

In this context, I would like to conclude by drawing the attention of your Excellency's Government to article 15 of the Convention against Torture provides that, "Each State Party shall ensure that any statement which is established to have been made as a result of torture shall not be invoked as evidence in any proceedings, except against a person accused of torture as evidence that the statement was made." I also further recall that paragraph 7c of Human Rights Council Resolution 16/23 urges States "To ensure that no statement established to have been made as a result of torture is invoked as evidence in any proceedings, except against a person accused of torture as evidence that the

statement was made, and calls upon States to consider extending that prohibition to statements made as a result of cruel, inhuman or degrading treatment or punishment, recognizing that adequate corroboration of statements, including confessions, used as evidence in any proceedings constitutes one safeguard for the prevention of torture and other cruel, inhuman or degrading treatment or punishment."